**Patrick W. BOATMAN, Trustee in Bankruptcy of Choice Vend, Inc.**

v.

**C.V. INDUSTRIES, INC., et al.**

**Civ. No. H–85–62 (PCD).**

United States District Court,
D. Connecticut.

July 24, 1985.

---

Joel N. Sable, Berman & Sable, Hartford, Conn., for plaintiff.

Robert J. Enright, Sorokin & Sorokin, Hartford, Conn., for defendant C.V. Industries.

Robert M. Dombroff, Schatz & Schatz, Ribicoff & Kotkin, Hartford, Conn., for defendant First Union Commercian Corp.

Eric Watt Wiechmann, Cummings & Lockwood, Hartford, Conn., for defendant Pepsico, Inc.

## RULING ON MOTION TO WITHDRAW REFERENCE AND CONSOLIDATE

DORSEY, District Judge.

Defendants have moved under the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. No. 98–353, July 10, 1984 (the 1984 Act), that this court withdraw the reference of an adversary proceeding to the bankruptcy court.

### I. *Background*

On October 4, 1984, plaintiff, the Trustee for the Estate of Choice Vend, Inc. (Trustee), a debtor-in-possession in a proceeding under Chapter 11 of Title 11 of the United States Code (Bankruptcy Code), brought an adversary proceeding against defendant C.V. Industries, Inc. (C.V.) seeking a determination that C.V. is indebted to the estate.[1] Of central concern to the Trustee is whether the estate is entitled to share in the proceeds of a sale by C.V. of certain property formerly in the possession of the estate.[2]

At the time of the sale of the leasehold estate that is at the core of this litigation, defendants C.V., First Union and Pepsico, as well as the Trustee, all claimed an interest in the property. In order to permit the sale of the property to be consummated despite these competing claims, the parties entered into an agreement that provided for a judicial determination of the entitlement and priority of each of the claimants to the proceeds of the sale. Pursuant to that agreement, the Trustee has brought the present action for a declaratory judgment of the rights of the various parties to the proceeds of the sale. Defendants have moved this court, pursuant to 28 U.S.C. § 157(d), to withdraw the reference to the bankruptcy court of the Trustee's adversary proceeding and to consolidate it with the declaratory judgment proceedings presently before this court.

### II. *Bankruptcy Amendments and Federal Judgeship Act of 1984*

Defendants' motion must be viewed in the light of the 1984 Act, which presents

---

1. In an order dated September 21, 1984, Chief Judge Daly provided that pursuant to Section 157(a), Title 28 U.S.C., added by Section 104(a) of the Act of July 10, 1984, P.L. 98–353, and subject to the remaining provisions of Section 157, all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C., pending on June 27, 1984, or filed on or after June 28, 1984, be referred to the bankruptcy judges for this district.

2. Pursuant to an order of the bankruptcy court, the Trustee filed a writ of attachment upon the leasehold interest in question.

the congressional response to constitutional defects found in the Bankruptcy Code by the Supreme Court in *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which it was held that bankruptcy judges lacked the jurisdictional authority to adjudicate claims based on state or common law. To remedy the constitutional defects noted in *Marathon*, the 1984 Act distinguishes between "core" proceedings under Title 11 and "non-core" proceedings "related" to Title 11 cases which arise under and must be determined by state law.

Under 28 U.S.C. § 1334, as amended by the 1984 Act, the district court has "original and exclusive jurisdiction of all cases under Title 11" and has "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C.A. §§ 1334(a) and (b)(1985). Pursuant to 28 U.S.C. § 157(a) (1985), each district court may provide that any or all cases or proceedings (core or non-core) shall be referred to the bankruptcy judges for the district. The remaining subsections of § 157 set forth the guidelines governing the manner in which the bankruptcy courts and the district courts are to deal with core and non-core proceedings.

Section 157(b)(1) establishes that bankruptcy judges may hear and enter final orders in all cases and core proceedings subject to the traditional standard of appellate review set forth in § 158.[3] Under § 157(c), bankruptcy judges may also preside over non-core proceedings related to a case under Title 11, but may not enter a formal order unless the parties consent.[4] Absent such consent, the bankruptcy judge must submit findings of fact and conclusions of law to the district court which shall, in turn, enter a final decision after considering the findings.

Lastly, § 157(d) establishes that the court may, upon its own motion or that of one of the parties, for cause shown, withdraw either core or non-core proceedings from the bankruptcy court; § 157(d) also dictates that, under certain circumstances inapplicable herein, the district court must withdraw a reference to the bankruptcy court.[5]

In support of their contention that the reference of the adversary proceeding to the bankruptcy court be withdrawn pursuant to the permissive withdrawal provision

**3.** Section 158 provides, in pertinent part:

(a) the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title. An appeal under this subsection shall be taken only to the district courts for the judicial district in which the bankruptcy judge is serving.

\* \* \* \* \* \*

(c) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil appeals generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

**4.** Section 157(c) provides:

(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under Title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under Title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

**5.** Section 157(d) states:

(d) The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

of the first sentence of § 157(d), defendants rely principally upon notions of judicial economy and efficient administration of justice. Alleging that the Trustee has in essence brought the same action in two different forums, defendants urge that the proceedings be joined and decided in one forum.

### III. *The Windsor Locks Property*

On December 21, 1981, Choice Vend, Inc., a Connecticut corporation with an office and principle place of business in Windsor Locks, filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code and thereupon became a debtor in possession of its assets.[6] Thereafter, on or about September 29, 1982, defendant C.V., together with the official Creditors' Committee of Unsecured Creditors of the Debtor's Estate, jointly proposed and filed a Modified Plan of Reorganization (Plan). At the time of confirmation of the Plan, the estate was the owner of a long term leasehold interest in a commercial building located in Windsor Locks, Connecticut. Pursuant to the Plan, this lease was transferred to Bradley Vending Corp., a subsidiary of C.V., in exchange for Bradley's obligation to make payments for the benefit of the estate's unsecured creditors totalling $2,500,000.

It is the Trustee's contention that this leasehold interest was thereafter diverted from Bradley to C.V. for no consideration and that the estate's creditors were thereby deprived of the single most valuable asset, formerly belonging to the estate, out of which to secure satisfaction of the promised deferred payments under the Plan. The question whether defendant C.V. is indebted to the estate forms the basis of both the adversary proceeding and this action.

It is defendants' contention that, pursuant to the Plan, the lease was transferred to the C.V. for good consideration and that *other* assets of the estate were transferred to Bradley, also for good consideration. Defendants Pepsico and First Union further contend that they are each entitled to the proceeds of the sale of the leasehold estate.

First Union alleges that on or about November 1982 defendant C.V. assigned its interest in the lease to First Union as security for a 2.5 million dollar loan. In an attempt to perfect a blanket security interest in the leasehold estate, based on this loan, First Union filed a Form UCC–1 with the Secretary of State and recorded the "Lessor's Agreement and Assignment of Lease" in the Land Records of the Town of Windsor Locks. Defendant First Union thus asserts that it is entitled to the lease proceeds by virtue of a first secured position in the assets of C.V.

Defendant Pepsico contends that First Union did not record a mortgage or other document in the Land Records which discloses the true nature of its transaction with C.V. or the true amounts of money involved as required by Connecticut law. In addition, defendant Pepsico alleges that it enjoys a superior interest in the lease by virtue of an attachment against the interests of C.V. dated October 26, 1984, and filed in the Windsor Locks Land Records.

### IV. *Withdrawal of References to the Bankruptcy Court*

Defendants contend in support of their motion for withdrawal of the reference under § 157(d) that the question before the bankruptcy court, i.e. whether C.V. is indebted to the estate, is a sub-issue of the issues necessary to a determination of the instant declaratory judgment action. Stating further arguments based on convenience and judicial economy, defendants urge this court to exercise its discretionary power to withdraw the reference to the bankruptcy court and to consolidate it with the declaratory judgment action.

The contours for the court's exercise of its discretion under § 157(d) are unclear. The Section itself is silent regarding what constitutes "cause" sufficient to warrant discretionary withdrawal and there is, as

---

**6.** On February 7, 1983, plaintiff was appointed Trustee in Bankruptcy of the Estate.

yet, little case law dealing with the discretionary withdrawal provisions of § 157(d). Nor does the legislative history of the enactment shed much light on the subject.

 It has been suggested, however, that the system contemplated by § 157 is properly analogized to the procedures governing United States magistrates and that bankruptcy judges should assist the district courts in bankruptcy matters. *In re Lion Capitol Group*, 48 B.R. 329, 336 (S.D.N.Y. 1985), suggests that in § 157 "Congress intended the bankruptcy court to hear all proceedings initially, subject to review by the district court of those matters over which the bankruptcy court could not enter final judgments." Unless there is some substantial reason why the adversary proceeding should be withdrawn, the matter should be reviewed first by the bankruptcy court.[7]

In the present action, no such compelling reasons have been set forth. Moreover, the question of whether the estate is a creditor of C.V. is one that predates the present conflict between the various parties in relation to the Windsor Locks property; at the time that the estate and C.V.'s rights were altered by the Plan, defendants First Union and Pepsico were not yet asserting interests in conflict with those of the estate. It thus follows that the initial determination of whether C.V. is indebted to the estate is better left with the bankruptcy court, subject to review.

 Defendants further contend that this case does not meet the standard that [o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936). Defendants are apparently concerned that a determination by the bankruptcy court will in some way settle the

rule of law that will govern their rights in the declaratory judgment action. Defendants' cited language is inapposite and their fears are unfounded, particularly since the proceedings before the bankruptcy court must come to the district court for final determination, there is no cause to exercise this court's discretion and withdraw the reference.

For the foregoing reasons, defendants' motion to withdraw the Trustee's reference to the bankruptcy court is denied.

SO ORDERED.

---

**7.** As the court in *In re Lion* made clear, the mere availability of *de novo* review does not constitute sufficient cause to withdraw a reference to

the bankruptcy court because such an interpretation would mean withdrawal of any case in which a non-core claim was involved.