**In the Matter of DUNES CASINO HOTEL, A New Jersey Partnership, Debtor.**

Civ. A. No. 85–5491(SSB).

United States District Court, D. New Jersey.

Aug. 21, 1986.

942

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Frank J. Vecchione, Donald H. Steckroth, Newark, N.J., for debtor.

Davis, Reberkenny & Abramowitz, P.A. by Arthur J. Abramowitz, Cherry Hill, N.J., for GNAC Corp.

Ravin, Sarasohn, Cook, Baumgarten & Fisch by Jonathan I. Rabinowitz, West Orange, N.J., for Unsecured Creditors' Committee of Dunes Casino Hotel, debtor and debtor-in-possession.

BROTMAN, District Judge:

This is the bankruptcy matter involving the Dunes Casino Hotel (hereinafter "Dunes"). Presently before the court are two motions by GNAC Corporation, an interested party in the bankruptcy proceeding. First, GNAC is appealing a September 26, 1985 order of the Honorable Rosemary Gambardella, U.S. Bankruptcy Judge, which denied GNAC's motions to: (1) modify the automatic stay of 11 U.S.C. § 362(a); (2) declare terminated the real estate agreement signed between the debtor, Dunes, & GNAC prior to the filing of the debtor's Chapter 11 bankruptcy petition; and (3) shorten the debtor's time to accept or reject the aforementioned agreement. GNAC's second motion seeks to have this court withdraw the reference to the bankruptcy court of a motion made before that court in October 1985. This court heard oral argument on GNAC's motions on February 21, 1986.

I. Factual Background [1]

On August 31, 1983, GNAC & Jack Bona, Inc. ("Bona") entered into a "Real Estate

---

1. The Bankruptcy Court opinion of September 26, 1985 (hereinafter the "September Opinion")

Option Agreement" (the "Agreement") for the purchase by Bona of certain GNAC-owned real property in Atlantic City, New Jersey. Under the Agreement, Bona obtained the exclusive right and option to purchase the property subject to the conditions set forth in the Agreement.

The Agreement provided Bona with an initial term of ninety days from the execution of the Agreement within which to exercise his purchase option. Bona had the right to extend the term of the option for one additional twelve-month term and six additional one-month terms reaching to May, 1985, provided that Bona gave GNAC written notice of the extension and paid additional monetary consideration. In the event the buyer exercised the option, the Agreement required that "unless otherwise agreed upon in writing between the parties," closing had to occur no later than sixty days from the date the buyer exercised the option. Agreement at ¶ 4. The contract did not contain an explicit "time is of the essence" provision.

On January 9, 1984, Bona assigned all of its rights under the Agreement to Dunes. Dunes continued to extend the life of its purchase option until May 29, 1985, at which time it notified GNAC of its exercise of the option and set the closing date of July 26, 1985. *See* September Opinion at 11. GNAC acknowledged receipt of Dunes' option notice on June 7, 1985 and in its reply letter to Dunes declared that "time is hereby made of the essence" with regard to the closing date. *Id.* at 13–14.

On June 24, 1985 Dunes commenced an action in the Superior Court of New Jersey, Chancery Division, Atlantic County, seeking specific performance of the Agreement. The debtor also filed a *lis pendens* on the property. Dunes asserts that it filed this state action because GNAC had transferred its interest in the property to its wholly-owned subsidiary, GNOC Corporation, in contravention of the Agreement.

On July 26, 1985 GNAC tendered deeds and title closing documents to Dunes and demanded that Dunes perform under the

Agreement by delivering the balance of the purchase price. September Opinion at 16. Dunes did not tender the purchase price, however, and contends that it refused to do so because GNAC failed to produce documentation that the premises were not subject to the requirements of the New Jersey Environmental Clean-Up Responsibility Act, N.J.S.A. 13:1(K)–6 *et seq.*, and that GNAC removed certain fixtures from the premises in violation of the Agreement. *Id.* GNAC disputes Dunes' contention and argues that Dunes failed to close on July 26, 1985 simply because it did not have the funds available to pay the purchase price. The bankruptcy court agreed that this was one of the reasons closing did not occur. The court noted the affidavit of Jack Bona in which Bona stated that at the time the present motion was filed he was still trying to raise the necessary funds. *Id.*

On July 26, 1985, GNAC sent a letter to Dunes in which it gave the debtor notice that it considered Dunes in default of the Agreement due to its failure to close on that date. GNAC "declare[d] that the agreement is terminated." *Id.*, at 17–18. That same day GNAC filed an action in the Superior Court of New Jersey, Chancery Division, Atlantic County, seeking a declaratory judgment that Dunes was in breach of the Agreement, that GNAC had not breached the Agreement, and that the Agreement was terminated. GNAC also sought the removal of the *lis pendens* on its property.

In its defense, Dunes relies on Paragraph 16 of the Agreement which provides the buyer with fifteen days in which to "cure" a default before the Agreement is terminated. On August 9, 1985, one day before the end of this "cure" period, Dunes filed its Chapter 11 petition.

On August 21, 1985 GNAC moved in the bankruptcy court to vacate the automatic stay with respect to the state court litigation or, in the alternative, for the bankruptcy court to assert jurisdiction over the Agreement and require Dunes to affirm or

set forth a well-detailed description of the facts upon which this court has relied extensively.

reject the Agreement within sixty days of the filing date of the petition. The bankruptcy court held a hearing on September 20, 1985 and rendered a decision of September 26, 1985. The court held the following: (1) GNAC was not entitled to vacation or modification of the automatic stay; (2) the Agreement was executory, and under 11 U.S.C. § 365 Dunes has a "reasonable" time to assume or reject the Agreement; and (3) Dunes was not required to assume or reject the Agreement within any particular time period because the court could not decide what a "reasonable" period was. *See* September Opinion at 19–61. Subsequent to that decision, GNAC filed the instant appeal and a new motion before the bankruptcy court on October 18, 1985, which it now seeks to have withdrawn to this court.

## II. Standard of Review

■ In general, when the district court reviews a decision by the bankruptcy court on a question of law, it applies a plenary standard of review. On the other hand, it cannot overturn the bankruptcy court's findings of fact unless they were "clearly erroneous." Bankruptcy Rule 8013; *In Re Morrissey,* 717 F.2d 100, 104 (3d Cir.1983). Relevant to the present case, the interpretation of a "wholly unambiguous" commercial contract is a question of law and thus subject to plenary review, but findings based on ambiguous contract language are questions of fact. *Matter of Barclay Industries, Inc.,* 736 F.2d 75, 78 n. 3, (3d Cir.1984), *quoting Landtect Corp. v. State Mutual Life Assurance Co.,* 605 F.2d 75, 79 (3d Cir.1979) (citation omitted). To be "unambiguous" a contract "must be capable of only one reasonable meaning." *Matter of Barclay Industries, Inc., supra,* 736 F.2d at 79. The court will follow this standard in its consideration of GNAC's appeal.

## III. Discussion of Appeal

### A. Modification of Automatic Stay

■ Under 11 U.S.C. § 362(a)(1), a party that files a Chapter 11 bankruptcy petition is entitled automatically to a stay of the commencement or continuation of any judicial proceedings against it. But the court can vacate a stay:

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if

(A) the debtor does not have an equity in such property; *and*

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (emphasis added). GNAC sought relief from the stay in bankruptcy court in order to continue with its state court action against Dunes. As the party requesting such relief, GNAC has the burden of proof on the issue of the debtor's equity while the party opposing such relief, Dunes, has the burden of proof on all other issues. 11 U.S.C. § 362(g); *Nazareth National Bank v. Trina-Dee, Inc.,* 731 F.2d 170 (3d Cir.1984).

■ The court will first address GNAC's argument that there is sufficient "cause" to modify the stay under Section 362(d)(1). The bankruptcy court correctly noted that a "finding of a lack of good faith" by the debtor in filing a Chapter 11 petition may be sufficient cause to vacate or modify a stay. September Opinion at 24–25; *Furness v. Lilienfield,* 35 B.R. 1006, 1009–10 (Bankr.D.Md.1983). The burden of proving good faith is on the debtor. 11 U.S.C. § 362(g)(2); *Matter of Century City, Inc.,* 8 B.R. 25, 30 (Bankr.D. N.J.1980).

■ The bankruptcy court determined that "in the absence of circumstances indicative of bad faith, I cannot find that the Chapter 11 petition was filed in bad faith." September Opinion at 32. This language seems to indicate an inappropriate placing upon GNAC of the burden of proving bad faith, rather than requiring Dunes to prove good faith. Whether or not this was the intent of the bankruptcy court, however, this court need only concern itself with the issue of whether the factual finding of

"good faith" by the bankruptcy court was "clearly erroneous."

The filing of a Chapter 11 petition is intended to give business debtors a "remedy for relief from financial distress" and to help "preserve the going concern value of the debtor's business for the mutual benefit of the debtor and his creditors." *Matter of Levinsky*, 23 B.R. 210, 215 (Bankr.E.D.N.Y.1982), *quoting, In re Diversified Leasing Services, Ltd.*, 4 B.C.D. 309, 312 (Bankr.E.D.Tenn.1978). It is perfectly legitimate for a business to file a Chapter 11 petition to "preserve [its] assets" from an impending loss if those assets are a necessary part of the "rehabilitation of an ongoing business." *Id.*, at 215. The court should weigh all the facts presented in a case to determine if good faith exists. Among the factors it should consider are whether a legitimate business exists, whether there are any unsecured creditors, whether the debtor has any equity in the property sought to be protected, and the timing of the filing of the petition. *Id.*, at 220; *Matter of Century City, Inc., supra*, 8 B.R. at 33.

■ A number of factors support the bankruptcy court's finding of good faith. For example, the court noted that the Chapter 11 filing "involves substantial assets [over $28 million] and substantial liabilities [over $24 million]." September Opinion at 32. In addition, there is a committee of unsecured creditors which has been actively engaged in these proceedings before both the bankruptcy judge and this court. These creditors have asserted claims of nearly $8 million. According to Jack Bona's affidavit, relied on heavily by the bankruptcy court, at the time of the filing Dunes was an ongoing business entity continuing in its efforts to develop its casino hotel project. *See* Affidavit of Jack Bona, September 9, 1985. In addition, Bona's affidavit clearly supports the argument that the property at issue was an integral element in a successful rehabilita-

tion and completion of the project. *See, e.g., id.* at 12–13.

GNAC focuses on the timing of the Chapter 11 filing and the negligible likelihood of the casino project's success to support its contention that there was no good faith here. Dunes filed the petition on August 9, 1985, the day before it would have lost its option to purchase the property from GNAC.[2] The late timing of this petition is not *per se* sufficient to overcome the evidence of good faith presented to the bankruptcy court. This case clearly is distinguishable from *Matter of Century City, Inc., supra*, in which the bankruptcy court found no good faith where there were no bona fide creditors. 8 B.R. at 30–31. It was not "clearly erroneous" for the bankruptcy court to conclude that at the time the petition was filed Dunes was a legitimate ongoing business enterprise which in good faith sought to invoke the operation of the bankruptcy court laws "in an attempt to effect a speedy efficient reorganization." *See Matter of Levinsky, supra*, 23 B.R. at 218. Dunes successfully met its burden of demonstrating good faith, and the court will affirm the bankruptcy court's finding.

■ Another basis for relief from a stay is "the lack of adequate protection of an interest in property" of the party seeking relief. 11 U.S.C., § 362(d)(1). The bankruptcy court ruled that relief based on this reasoning was not available to GNAC before Dunes had a "reasonable time" to decide whether to assume or reject the Agreement with GNAC. *In re Sweetwater*, 40 B.R. 733, 745 (Bankr.D.Utah 1984). This decision hinges on the conclusion that the Dunes-GNAC Agreement was an executory contract at the time of GNAC's motion for relief. That relates directly to the merits of the case, which will be addressed *infra*. The court will affirm the bankruptcy court's view that if the Dunes-GNAC purchase agreement is executory GNAC cannot invoke the "lack of adequate protec-

2. This assumes that Dunes had a fifteen-day grace period following its July 26, 1983 default in which it could cure the default. GNAC still argues that there was no applicable grace period, but this argument will be addressed *infra*.

tion" grounds to modify a stay. *See, e.g., Matter of Whitcomb & Keller Mortgage Co., Inc.,* 715 F.2d 375, 378 (7th Cir.1983).

■ Under Section 362(d)(2) of the Bankruptcy Code, the court can only grant relief from the stay if it finds both that the debtor lacks equity in the property and that such property is "not necessary to effective reorganization." As noted above, GNAC has the burden of proof on the equity question. 11 U.S.C. § 362(g)(1). GNAC has presented no evidence to support the argument for Dunes' lack of equity and does not pursue it in this appeal. Therefore it is not entitled to relief from the stay pursuant to Section 362(d)(2). The court need not consider whether the property is necessary to an effective reorganization, but notes in passing that the Bona affidavit makes such a finding likely.

■ For all of the above reasons, the court will affirm the portion of the bankruptcy court's decision in which it denied GNAC's application for relief from the automatic stay provision of 11 U.S.C. § 362. The bankruptcy court was also correct in subsequently asserting jurisdiction over the GNAC-Dunes purchase agreement at issue. *See* 28 U.S.C. § 157 (Bankruptcy court has jurisdiction over all "core proceedings" arising under Title 11, which include those affecting the assets of the estate).

## B. Status of Contract at Date of Chapter 11 Filing

In the proceedings below, GNAC sought a ruling from the bankruptcy court that Dunes' right to purchase the property terminated prior to Dunes' filing of the Chapter 11 petition. This argument is based on the principle of bankruptcy law that an "executory contract or lease validly terminated prior to the institution of bankruptcy proceedings is not resurrected by the filing of the petition in bankruptcy." *Matter of Triangle Laboratories, Inc.,* 663 F.2d 463, 467–68 (3d Cir.1981). Thus, the court must examine the status of the contract on the date the petition was filed. *In re Norquist,* 43 B.R. 224, 230 (Bankr.E.D.Wash.

1984). The bankruptcy court held that the Agreement had not terminated prior to the petition filing date and it remained an executory contract at that time. GNAC now seeks a reversal of this decision, the review of which is plenary.

GNAC argues the following in support of its appeal: first, that on the scheduled closing date for the purchase of the property, July 26, 1985, Dunes breached the Agreement by not tendering the purchase price and that by the terms of the Agreement it was then terminated; second, that the "cure" provision contained in the Agreement did not extend the termination date from July 26 to August 10; and third, that even if the contract had not terminated prior to the petition filing date, it was not an executory contract on the filing date and thus Dunes should be required to assume or reject the contract within sixty days under the Bankruptcy Code. Dunes counters that the Agreement was not terminated prior to the filing and remained at the time of the filing an executory contract which Dunes need assume or reject only within a "reasonable time".

Paragraph 6 of the Agreement provides that:

(a) unless otherwise agreed upon in writing between the parties, closing shall take place not less than thirty (30) days, nor greater than sixty (60) days after the date on which Buyer exercises the Option....

Dunes exercised its option to purchase the property on May 29, 1985 and the parties mutually agreed upon a closing date of July 26. GNAC claims that its letter to Dunes of June 7 which specifically stated that "time is of the essence" made July 26 the last possible closing date. Two important factors compel the conclusion, however, that Dunes' failure to tender payment of the purchase price on that day did not terminate the Agreement.

■ Paragraph 16 of the Agreement granted to Dunes the right to cure a potential default under the Agreement within

fifteen days of notice of default by GNAC. The paragraph reads in full:

> 16. *Default by Buyer. In the event that Seller shall assert a default on the part of Buyer under the terms of this Agreement,* then Seller shall provide Buyer with written notice of such asserted default and, *if Buyer shall refuse or fail,* or notify Seller that it does not intend, *to cure the asserted default within fifteen (15) days after receipt of such notice, this Agreement shall be terminated* in which event all Option Consideration and any Additional Consideration theretofore paid by Buyer shall be retained by Seller as and for Seller's liquidated dmages without any further loss, cost, damage, right or remedy in favor of either party against the other. It is understood and acknowledged between the parties hereto that *in the event of any default of Buyer under this Agreement, whether prior to or after exercise of the Option,* the damages which Seller would sustain would be speculative and difficult to ascertain, and that the retention of the Option Consideration and any Additional Consideration by Seller represents the parties' best estimate of the damage which would be sustained by Seller in the event of Buyer's default hereunder (emphasis added).

GNAC's argument that the paragraph only permits the cure of defaults in connection with the payment of the option consideration is unsupported by the text. The plain language of this provision indicates that the buyer (Dunes) has fifteen days to cure "a default on the part of the Buyer under the terms of this Agreement." There is no explicit limitation on defaults. Therefore, when GNAC notified Dunes on July 26, 1985 that Dunes was in default of its obligations under the Agreement, the debtor had fifteen days within which to cure that default. The Agreement could not expire until August 10, 1985 based on the cure provision. The bankruptcy court's interpretation of this unambiguous contract language is correct and will be affirmed.

■ GNAC asserts that despite the presence of the cure provision, the Agreement still terminated on July 26, 1985 because GNAC had notified Dunes that time is hereby of the "essence" and the deal failed to close on that date. In a real estate contract the closing date is generally only a "formality". *Paradiso v. Mazejy,* 3 N.J. 110, 115, 69 A.2d 15 (1949), *quoting Reade v. McKenna,* 99 N.J.Eq. 764, 134 A. 371 (Chapter 1926), *aff'd,* 101 N.J.Eq. 304, 137 A. 918 (E. & A. 1927). If time is not of the essence under the explicit terms of the contract, however, "it can be made so by later notice" if such notice sets a new time which is "reasonable" given the circumstances of the case. *Paradiso, supra,* 3 N.J. at 115, 69 A.2d 15. Under New Jersey law, what constitutes a "reasonable time ... is usually an implication of fact," derived from these "attendant circumstances". *Barco Urban Renewal Corp. v. Housing Authority of Atlantic City,* 674 F.2d 1001, 1007–08 (3d Cir.1982), *quoting West Caldwell v. Caldwell,* 26 N.J. 9, 28, 138 A.2d 402 (1958). Thus, this court can only overturn the bankruptcy court's finding on this question if it is clearly erroneous.

■ The situation in this case is that time had never been a crucial factor until GNAC declared it to be so in its June 7, 1985 letter to Dunes. Consistent with the Agreement, the debtor had continually extended its option to purchase until May 29, 1985 when it exercised the option. Furthermore, the contract explicitly permits a cure period of fifteen days from the time of a default by the buyer. These facts led the bankruptcy court to conclude that it was not reasonable for GNAC to set July 26, 1985 as the date on which the contract would terminate if not completed. This court agrees. At the very least, a reasonable time would have included that fifteen day cure period. In sum, the court will affirm the bankruptcy court's finding that GNAC's notice of June 7 was not "reasonable" and that time did not become "of the essence" on July 26, 1985. Thus, the court holds that the contract did not terminate on July 26, 1985.

The next question the court must review is whether the non-terminated Agreement was still an "executory" contract at the time of the Chapter 11 filing. Under the Bankruptcy Code, the amount of time a debtor has within which to assume or reject a contract is determined in part by its status as an executory contract. *See* 11 U.S.C. §§ 365, 108.

■■■■ The Code does not define "executory contract," but the legislative history identifies it as one "on which performance remains due to some extent on both sides." Notes of Committee on the Judiciary, S.R. Rep. No. 96–989, 95th Cong., 2d Sess. 58 (1978), contained in 1978 U.S. Code Cong. & Admin. News 5787, 5844. The bankruptcy court relied on an oft-cited definition of an executory contract provided by Professor Countryman:

> [A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countryman, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973), cited in September Opinion at 38; *In re Alexander,* 670 F.2d 885, 887 (9th Cir. 1982); *In re Chicago, Rock Island & Pacific R.R. Co.,* 604 F.2d 1002, 1004 (7th Cir.1979); *In re Knutson,* 563 F.2d 916, 917 (8th Cir.1977).

There is some confusion arising in cases in which a debtor's only uncompleted obligation under a contract is the payment of money. For example, it is "well-established" that "where all elements of performance have been accomplished leaving only an obligation to pay money," there is no executory contract. *In re Murtishi,* 55 B.R. 564, 569 (Bankr.N.D.Ill.1985), *citing Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043 (4th Cir.1985).

The legislative history of the Bankruptcy Reform Act of 1978 also states that a *"note* is not usually an executory contract if the only performance that remains is repayment" H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 347, *reprinted in* 1978 U.S. Code Cong. & Admin. News 6303–04 (emphasis added). Yet the basis for this limitation of the definition of executory is that "[p]erformance on one side of the contract would have been completed...." *Id.* The legislative history provides no support for finding a contract executory where performance is also due from the non-bankrupt party. In *Shaw v. Dawson,* 48 B.R. 857 (D.N.M.1985), the court held that a contract in which the debtor purchasers owed only money but the sellers had yet to deliver the deed for the land "falls squarely within the accepted definition of an executory contract." 48 B.R. at 862; *see also In re Sun Belt Electrical Constructors, Inc.,* 56 B.R. 686, 688–89 (Bankr.N.D.Ga. 1985) (Court found executory contract where debtor contractor's only remaining obligation was to endorse checks to subcontractor); R. Aaron, Bankruptcy Law Fundamentals § 9.04[1] at 9–34 (1985) (Contract can be "executory" if debtor owes money and non-bankrupt party also owes performance). Thus, the court should focus on whether substantial performance remains on *both* sides of the real estate contract.[3]

■■■■ The Ninth Circuit's opinion in *In Re Alexander, supra,* is particularly relevant to the case at bar. In *Alexander,* the panel held that the real estate contract at issue was "substantially unperformed" and thus "executory" because the plaintiff still had to pay the purchase price and the debtor had to give up possession of the real property and convey title. 670 F.2d at 887. It noted that the mere tender of performance did not prevent the contract from

---

**3.** The court will not follow the approach of those courts which have looked only at the status of the debtor. *See e.g., In re Oxford Royal Mushroom Products,* 45 B.R. 792, 794 (Bankr.E. D.Pa.1985) (no executory contract if debtor's sole obligation is the payment of money); *In re Booth,* 19 B.R. 53 (Bankr.D.Utah 1982) (purchase contract not executory because debtor merely owed money). Such an approach is inconsistent with the legislative history's concern about performance remaining on *both* sides of a contract.

remaining executory. *Id.* The court found it significant that neither party had received any benefit under the contract. *Id.*, *citing In re Knutson, supra,* 563 F.2d at 917.

Under the *In Re Alexander* standard, the court finds that on July 26, 1985 "substantial performance" remained on both sides of the Dunes-GNAC Agreement. GNAC had tendered the deeds and title documents, but had not delivered them, at least in part due to Dunes' refusal to accept them. *See* September Opinion at 16. Thus, GNAC had not completed its performance. Of course, Dunes still owed the purchase price at that time. Consistent with its rights under the contract, GNAC notified Dunes that it was in default, thus triggering the "cure" provision. The contract would remain "executory" from July 26 to August 10, and the Chapter 11 filing on August 9 preserved that "executory" status pending reorganization. In sum, this court will uphold the bankruptcy court's determination that the contract was "executory" at the time of the filing. The contract did not terminate on August 10, 1985.

### C. Dunes' Assumption or Rejection of the Agreement

Section 365 of the Bankruptcy Code gives the debtor the right to assume or reject an executory contract. 11 U.S.C. § 365; *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1212 (7th Cir.), *cert. denied,* 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984).[4] The trustee or debtor "may assume or reject the contract" at any time before the confirmation of a [reorganization] plan. 11 U.S.C. § 365(d)(2). Upon the request of a party to a contract with the debtor, a court "*may* order" the debtor to assume or reject the contract within a specified "reasonable time". *Theatre Holding Corp. v. Mauro,* 681 F.2d 102, 105 (2d Cir.1982) (emphasis added). What constitutes a reasonable time is left to the bankruptcy court's dis-

cretion in light of the circumstances of the case. *Id.* at 105, *citing In re Flying W. Airways,* 328 F.Supp. 1256, 1258 (E.D.Pa. 1971). After analyzing the facts of this case the bankruptcy court held that the record as of September 26, 1985 was not sufficient for the court to determine what a "reasonable" time would be. September Opinion at 61. This court must now decide if the bankruptcy court abused its discretion.

In determining what constitutes a reasonable time within which a debtor should assume or reject a contract, the court should consider a number of factors, including: "The nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in derogation of Congress' scheme that the court may be said to be arbitrary." *In re GHR Energy Corp.,* 41 B.R. 668, 676 (Bankr.D.Mass.1984), *quoting In re Midtown Skating Corp.,* 3 B.R. 194, 198 (Bankr.S.D.N.Y.1980). Above all, the court should interpret reasonable time consistent with the broad purpose of Chapter 11, which is "to permit successful rehabilitation of debtors." *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984).

After reviewing the circumstances at the time GNAC's motions came before the bankruptcy court, it is clear that the bankruptcy court did not abuse its discretion by failing to specify a time within which the debtor should assume or reject the contract. Considering the complexity of this case, the time period between the petition filing and the September 26 opinion was relatively short. In addition, there is little question that the property was important to what at the time still appeared to be a very viable casino project. Although GNAC was frustrated by the delay in resolving its interest in the property, on the whole the equities as of September 26, 1985

---

**4.** Section 365 applies to this case rather than 11 U.S.C. § 108(b), because Section 365 explicitly applies to executory contracts. *Moody, supra,*

734 F.2d at 1214–16. The critical issue, already decided here, is whether the contract is executory.

did not mandate compelling Dunes to assume or reject the contract by any specified time. In short, the bankruptcy court did not abuse its discretion by refusing to set a "reasonable time," and this court will affirm its decision.

This court notes that the bankruptcy court's denial of GNAC's motion to compel the debtor's decision on the contract was denied without prejudice. With the amount of time that has passed between the bankruptcy court's decision and now, the court has little doubt that the record has grown substantially in this case. GNAC certainly may renew its motion to compel assumption or rejection and the bankruptcy court should be in a far better position to set a specific timetable for Dunes to act.

### D. Conclusion

With regard to GNAC's appeal of the bankruptcy court decision of September 26, 1985, the court will affirm the bankruptcy court in all respects and thus deny the appeal.

### IV. GNAC's Motion To Withdraw Reference Of Its October 1985 Motion before Bankruptcy Court

On October 18, 1985 GNAC made a motion before the bankruptcy court in which it sought in large measure the same relief denied by the bankruptcy court in September, namely: to vacate or modify the stay under 11 U.S.C. § 362(d); to order the debtor to assume or reject the Agreement within a specified time period; and to dismiss the entire bankruptcy case for cause (not raised in the September motion). The bankruptcy court ruled on November 21, 1985 that it lacked jurisdiction over this motion due to the appeal of the September 26 decision which had just been filed with this court. GNAC now seeks to withdraw reference of the October motion from the bankruptcy court and have this court decide the October motion.

The Bankruptcy Court Amendments and Federal Judgeship Act of 1984 authorized the district courts to refer bankruptcy cases and proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). But the district court has the power to withdraw the reference "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Furthermore, the district court *must* withdraw the reference if "resolution of the proceedings requires consideration of both Title 11 *and other laws of the United States* regulating organizations or activities affecting interstate commerce." *Id.* (emphasis added). There are no such federal laws involved in the case at bar, so GNAC is only entitled to have its motion withdrawn for "cause". This decision is within the discretion of the district court.

Among the factors to consider in determining whether "cause" exists to withdraw reference are convenience, judicial economy and a particular court's knowledge of the facts. *See, e.g., Boatman v. C.V. Industries, Inc.,* 51 B.R. 574, 577 (D.Conn.1985); *Matter of Edward Pirsig Farms, Inc.,* 47 B.R. 376, 378 (D.Minn. 1984). In the case at bar these factors weigh heavily toward denying GNAC's motion to withdraw reference. The court has denied GNAC's appeal of the bankruptcy court's September 26, 1985 decision and effectively decided several of the issues raised in the October motion. All issues are now before the bankruptcy judge who has been involved with this case consistently since the filing of the petition. It would make no sense for this court to engage in a *de novo* consideration of these issues. GNAC may continue to press in the bankruptcy court for relief for the stay and for an order compelling the assumption or rejection of the Agreement by Dunes.

### V. Conclusion

For the above-stated reasons the court finds that no "cause" exists to justify the withdrawal of the reference of the October 18 motion to the bankruptcy court. Consequently, the court will deny GNAC's motion to withdraw.

This decision, combined with the affirmance of the bankruptcy court's September

26 decision, now squarely places all outstanding issues in this case before the bankruptcy court.

The court will enter an appropriate order incorporating all the above-stated decisions.