**In re Larry NOACK, d/b/a Taylor Rental Center, Debtor.**

**TAYLOR RENTAL CORPORATION, Plaintiff,**

**v.**

**JOHN DEERE CO., Homelite Division of Textron, Clark Equipment Credit Corp., Wacker Corporation, Valweld, Inc., and J.I. Case Corp., Defendants.**

**Bankruptcy No. 83–01338.**
**Adv. No. 83–0552.**

United States Bankruptcy Court,
E.D. Wisconsin.

Nov. 9, 1984.

Jack U. Shlimovitz, Ludwig & Shlimovitz, Milwaukee, Wis., for plaintiff.

John J. Herson, Herrling, Myse, Swain & Loomis, Ltd., Appleton, Wis., for defendant J.I. Case Corp.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

The sole issue is whether an agreement entitled "LPL Equipment Lease" is a true lease or a disguised security agreement.[1]

On March 3, 1981, the agreement, purporting to be a lease of a fork lift and a back hoe was entered into between Service Motor Company as lessor and Larry Noack,

---

1. This matter was submitted to the Court for a decision upon a stipulated statement of facts. The only parties in interest in the pending dispute are the plaintiff and defendant J.I. Case Corp. All disputes between the plaintiff and the other defendants have been fully resolved.

d/b/a Taylor Rental Center ("debtor") as lessee. It was for 60 months and provided for payments of $1,027.66 each month. Thereafter, on March 5, 1981, Service Motor Company assigned its interest to J.I. Case Corp. ("defendant"). On April 15, 1983, the debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code.

A dispute exists because Taylor Rental Corporation ("plaintiff") holds a perfected security agreement in all inventory of the debtor which is being used for rental purposes, including all after-acquired inventory. Plaintiff contends that the LPL Equipment Lease was, in reality, a purchase money security agreement and not a lease. Plaintiff further claims, therefore, that defendant was required not only to perfect its security interest by appropriate recording (which was done) but was also required to give written notice to all prior perfected lenders, including in this case, plaintiff, in accordance with the provisions of Wisconsin Stats. 409.312 (which was not done).[2] Plaintiff asserts that defendant's failure to comply resulted in plaintiff holding a security interest superior to the defendant's conflicting security interest in the forklift and backhoe.

Defendant, in response, states Wisconsin Stats. 409.312 does not apply because the LPL Equipment Lease is a true lease.[3]

■ In order to reach a determination as to the nature of the document in question, an understanding of certain statutory provisions and legal principles is appropriate. Section 1–201(37) of the Uniform Commercial Code and its Wisconsin counterpart, Wisconsin Stats. 401.201(37) provide:

"Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Although there are no absolute standards to distinguish a true lease from a secured transaction, many courts have earmarked certain factors as reflective of the parties' intentions. *In re Loop Hosp. Partnership*, 35 B.R. 929 (Bankr.N.D.Ill.E.D.1983). The true intention of the parties can only be ascertained from a careful analysis of the language of the entire instrument, in the light of those particular incidents of ownership which are consistent with a proprietory interest in the property. *In re Loop Hosp. Partnership, supra; Matter of Anton's Lounge and Restaurant, Inc.,* 40 B.R. 134 (Bankr.E.D.Mich.,1984). If, upon a balancing of these factors, the proprietory interest in the property is weighted in favor of the party designated as lessee, then the document is in reality a security agreement. If, on the other hand, the balance of incidents of ownership tips toward the party designated as lessor, then the document is a true lease.

---

**2.** Wis.Stats. 409.312(3) provides as follows:

"A perfected purchase money security interest in inventory has priority over a conflicting security interest in the same inventory ... if:
(a) The purchase money security interest is perfected at the time the debtor receives possession of the inventory; and
(b) The purchase money secured party gives notification in writing to the holder of the conflicting security interest if the holder had filed a financing statement covering the same types of inventory 1) before the date of the filing made by the purchase money secured party or 2) before the beginning of the 21-day period where the purchase money security interest is temporarily perfected without filing or possession (s. 409.304(5)); and

(c) The holder of the conflicting security interest receives the notification before the debtor receives possession of the inventory; and
(d) The notification states that the person giving the notice has or expects to acquire a purchase money security interest in inventory of the debtor, describing such inventory by item or type."

**3.** This Court recognizes that the dispute involves third parties and might well justify abstention under 28 U.S.C.A. § 1334(c)(1). However, because both the plaintiff and defendant have urged this Court to resolve the issue, the Court has acceded to their mutual request.

■ In the final analysis, the facts of each particular case shall govern, always bearing in mind the Uniform Commercial Code's abhorrence of secret liens. *See*, J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code*, § 22–3 at page 883 (2nd Ed.1980).

■ The agreement before this Court contains a significant number of characteristics considered by courts when confronted with this issue. The agreement in dispute is labeled a "lease" and the parties are designated as "lessor" and "lessee".[4] Also, it specifically contains a clause stating it is intended to be a lease (clause 11). Nevertheless, the fact that an agreement is denominated as a lease is not necessarily controlling. *In re Tulsa Port Warehouse Co., Inc.*, 4 B.R. 801, 805 (N.D.Okla.1980). A party cannot avoid the legal consequences of an installment sales contract by simply labeling a financing agreement as a lease. *In re Coors of the Cumberland, Inc.*, 19 B.R. 313, 316 (Bankr.M.D.Tenn. 1982). Its intent can only be measured by the legal *effect* or *function* of the transaction, not by its form (*see, In re Shangri-la Nursing Center, Inc.*, 31 B.R. 367, 371 (Bankr.E.D.N.Y.1983)). Therefore, deeper probing is in order. It has been held that the following factors, if present, point to the particular agreement as being a secured transaction:

(a) if the lessee is required to insure the items on behalf of the lessor in an amount equal to the total rental payments,

(b) if the risk of loss or damage is on the lessee,

(c) if lessee is to pay for taxes, repairs, damage and maintenance,

(d) if there are default provisions governing acceleration and resale of the item,

(e) if there is a substantial nonrefundable deposit requirement,

(f) if goods are to be selected from a third party by the lessee,

(g) if rental payments are a reasonable equivalent of the cost of the items plus interest,

(h) if the lease is to be discounted with a bank, and

(i) if warranties generally found in a lease are excluded by the agreement.

*In re Tucker*, 34 B.R. 257, 261 (Bankr.W.D. Okla.1983); *Matter of Anton's Lounge and Restaurant, Inc., supra*.

■ In the agreement before this Court, it is the lessor who is required to provide insurance on the equipment at its full insurable value (clause 2). The risk of loss is upon the debtor who must hold the lessor harmless (clause 3). The agreement also obligates the debtor to be responsible for all necessary maintenance and repairs (clause 4). All necessary license and registration fees and taxes assessed for the use of the equipment must be paid by the lessor (clause 5). The agreement also grants to the lessor, in the event of default in payment, an option to either repossess the equipment and retain all payments received or sell the equipment and from the sale of proceeds, after deducting selling expenses, receive from the lessee the balance due under the terms of the agreement as if fully completed (clause 8). In addition, this agreement contains none of the warranties which are normally found in a pure lease. All of these factors suggest that the debtor acquired a proprietory interest and that the document in question is a security agreement.

Another guideline often considered is which party is entitled to the equipment at the expiration of the agreement. In the agreement before this Court, there is neither an option to purchase nor a mandatory purchase clause. Neither party to the transaction is entitled to possession of the equipment upon termination of the agreement; instead, the equipment must, at that time, be sold on the open market. It is this

---

4. Throughout this decision, the Court refers to the parties as "lessor" and "lessee" because the instrument has so identified them. However, such reference is not conclusive as to the real nature of the agreement in question.

factor which distinguishes this case from *In re Spring Valley Meats, Inc.*, 94 Wis.2d 600, 288 N.W.2d 852 (1980) where the court construed the agreement to be a pure lease since upon its termination, the equipment was required to be returned to the lessor without any obligation for it to be sold thereafter.

There is a "residual guaranty" clause in the LPL Equipment Lease (clause 10) which provides that, at the expiration of the agreement, the equipment shall be sold, and the lessor shall be guaranteed a fixed sum, referred to as the "residual value" of the equipment. In this case, the residual value was established at $13,050.00. If the net sales proceeds which are realized, exceed such residual value, the lessee shall receive 80 per cent of such excess and the remaining 20 per cent shall be remitted to the lessor. However, if the net sales proceeds realized are less than such residual value, it is the lessee's obligation to remit to the lessor such deficiency. This Court has examined three cases containing similar clauses: *In re Coors of the Cumberland, supra; In the Matter of Gehrke Enterprises, Inc.*, 1 B.R. 647 (Bankr.W.D. Wis.1979); *In re Tulsa Port Warehouse, supra.* In all of these cases, the agreements were construed as leases intended for security. It was pointed out that the risk in disposing of the assets was upon the lessee since the lessor was assured of a fixed return regardless of what was ultimately received from the sale of the equipment. The residual guaranty clause in the LPL Equipment lease is no different.

The total amount that a party is obligated to pay under the terms of a particular agreement also has a bearing on its true character. If this total is substantially less than the value of the equipment as of the time the agreement was entered into, it would suggest that the party was paying for the use of the property and not for its purchase. If the LPL Equipment Lease is fully completed, the lessor will have received $61,659.60 (the total of the 60 monthly payments) together with a final payment of not less than $13,050.00 (under the residual guaranty clause) for a combined sum of not less than $74,709.50.[5] An appraisal presented to this Court concludes that the equipment, if it had been purchased from the dealer as of March, 1981, would have had a value at that time "in the range of $57,000.00." A comparison of this appraisal with the total proceeds to be received by the lessor under the agreement indicates that the plaintiff will receive a return equivalent to the full value of the equipment as of the inception of the agreement together with an effective interest rate of slightly more than 9 per cent. This supports the conclusion that the agreement was a security agreement.

After scrutinizing all pertinent factors, this Court is persuaded that the LPL Equipment Lease conferred upon the debtor signifies indicia of ownership consistent with a proprietory interest in the equipment. It is also a rule of construction that where there is any doubt as to the meaning of an instrument, it shall be construed against the party who drafted it (in this case, against the lessor). *In Matter of Smith Management, Inc.*, 8 B.R. 346 (Bankr.W.D.Wis.1980).

The LPL Equipment Lease is therefore, in legal effect, a security agreement. Because of the defendant's failure to comply with Wis.Stats. 409.312, as between the conflicting interests of the plaintiff and the defendant, it is the plaintiff's interest which has priority.

This decision shall constitute findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

---

5. If the net sale proceeds received for the equipment generate funds exceed $13,050.00, as previously noted, the lessor will also receive 20 per cent of such excess. Because this is uncertain, it has been disregarded for purposes of this analysis.