**In re John P. FARRELL, Barbara L. Farrell, SSAN(S): 569–44–5995 and 277–50–9070, Debtors.**

**Bankruptcy No. 2–86–02736.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 3, 1987.

Donald A. Mullin, Columbus, Ohio, for GMAC.

David M. Whittaker, Columbus, Ohio, for debtors.

John P. Farrell, Barbara L. Farrell, Columbus, Ohio.

Frank M. Pees, Trustee.

## ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon the requested confirmation of an amended Chapter 13 plan proposed by debtors John and Barbara Farrell and upon an objection to that confirmation filed on behalf of General Motors Acceptance Corporation ("GMAC"). The Court heard oral argument by both parties and, for the reasons set forth below, determines that confirmation of the debtors' plan must be denied.

The Court notes that the debtors' plan calls for payments on a graduated scale beginning with $175 each month for twelve (12) months, and increasing to $650 each month for twelve (12) months, $1250 each month for twelve months and $1775 each month thereafter. Allowed secured claims, priority unsecured claims and allowed general unsecured claims are to be paid in full. The plan, as proposed, will require a period of fifty-two (52) months for completion.

With respect to its specific treatment of GMAC, the debtors' plan proposes to treat that obligation as a fully secured claim which will be paid in full to the value of the collateral plus a discount factor equal to the current market rate of interest as required by 11 U.S.C. § 1325(a)(5) and *Memphis Bank & Trust Co. v. Whitman (In re Whitman)*, 692 F.2d 427 (6th Cir.1982). GMAC has objected to confirmation of the plan on the ground that the nature of its claim is as a lessor under the terms of a Lease Agreement (the "Agreement") entered into between GMAC and debtor John Farrell ("Farrell"). GMAC asserts that the plan's proposed treatment of its claim is inconsistent with the terms of the Agreement. GMAC also maintains that the Agreement may not be assumed by the debtors through their Chapter 13 plan because it is a "contract to make a loan or extend other debt financing" within the meaning of 11 U.S.C. § 365(c)(2).

It is the debtors' position that the Agreement is actually in the nature of an installment sales contract for which § 365(c)(2) is inapplicable. However, the debtors argue that if the Court determines the Agreement to be a "true lease," as opposed to a "lease intended as security," such lease does not fall within the ambit of § 365(c)(2). Accordingly, the debtors alternatively propose to assume the unexpired lease obligation and cure any arrearage thereunder

through their Chapter 13 plan pursuant to § 365(a) and (b).

The issues before the Court are threefold. First, the Court must determine the threshold issue of whether or not the Agreement is a "true lease" or a "lease intended as security." If the Agreement is one intended as a security device, then the debtors may treat GMAC's claim as secured in an amount equal to the value of the collateral plus an appropriate discount factor pursuant to § 1325(a)(5). If, on the other hand, the Court finds the Agreement to be a "true lease," it must then determine if the Agreement is a "contract to make a loan or extend other debt financing" as contemplated under § 365(c)(2). If § 365(c)(2) is applicable in this instance as GMAC contends, the debtors are foreclosed from assuming the unexpired lease obligation through their Chapter 13 plan. However, should the Agreement be construed as a lease, but not fall within the scope of § 365(c)(2), the Court must determine, as a condition of confirmation, if the manner in which the debtors' plan proposes to assume the unexpired lease satisfies the requirements of § 365(a) and (b).

The parties agree there is no dispute as to the relevant facts. Farrell and GMAC entered into the Agreement on March 17, 1983 for the lease of a 1983 Chevrolet van to be used in Farrell's plumbing business. Upon delivery of the vehicle, Farrell paid a security deposit of $225, title, license and registration fees totaling $84.30 and an initial installment of $195.38. Thereafter, Farrell was obligated to pay $195.38 per month for a total of $9,378.24 over the 48–month term of the Lease.

The Agreement called for Farrell to pay all costs associated with titling, registering and licensing the vehicle; maintenance, repair and operation costs; and all taxes. Farrell was also to provide insurance with coverage limits determined by GMAC. The parties further agree that Farrell was current on all payments called for under the Agreement up to the date of his Chapter 13 petition, July 16, 1986.

Pursuant to the Agreement, Farrell is obligated to return the vehicle at the end of the lease term. However, at lease maturity, Farrell also has the option to purchase the vehicle at a price GMAC determines to be the current fair market value of the vehicle. It therefore follows that Farrell may reject GMAC's determination of the vehicle's fair market value and may elect not to exercise the option.

The Bankruptcy Code, while it provides for the assumption and rejection of a lease, does not define the term "lease." Section 101(45) of Title 11, United States Code defines a "security interest" as a lien created by an agreement. The legislative history of this section indicates that state or local law should be applied in determining whether a lease constitutes a security interest under the Bankruptcy Code. H.R. No. 95–595, 95th Cong., 1st Sess. at 314 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

Relevant state law, found in Ohio Revised Code § 1301.01(KK), states in pertinent part:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

While that Revised Code provision may compel a finding that a lease is intended as security if a nominal "buy-out" provision is included, it does not simplify or assist in that task with the Agreement between Farrell and GMAC.

After review and synthesis of numerous decisions in the bankruptcy and commercial areas by both federal and state courts, this Court adopts the following approach for determining if an agreement is a "true lease" or a "lease intended as security." This approach seeks to determine, by objective criteria, the intent of the parties at the time the agreement was made.

■ Perhaps the most important factor to be considered in this analysis is the status of the lessee at the end of the lease term. The Sixth Circuit in *Jahn v. M.W. Kellogg Company, Inc. (In re Celeryvale Transport, Inc.)*, 822 F.2d 16 (6th Cir. 1987), recently considered this issue in a case involving a trailer lease which was construed under an identical Tennessee statute [Tenn.Code Ann. § 47–1–201(37)]. Relying upon a Tennessee Supreme Court case, the Court stated:

> [T]he most illustrative test to distinguish between a true lease and a lease intended as security is whether the "lessee" is "obligated to accept and pay for the property or [instead] is obligated only to return or account for the property according to the terms of the lease from which he may be excused if he exercises his privilege of purchasing it." If the former is true, then the lease is a security instrument in a disguised sale; if the latter, then a true lease exists. *Kellogg* at 18, citing *United States Fidelity and Guaranty Company v. Thompson and Green Machinery Company, Inc.*, 568 S.W.2d 821, 825 (Tenn.1978).

The Eighth Circuit in *Carlson v. Tandy Computer Leasing*, 803 F.2d 391 (8th Cir. 1986) also found that an absolute obligation by the lessee to purchase rental property at the end of a lease term is the touchstone in determining whether a security interest was intended.

■ With respect to the lessee's ability to purchase the property, courts have concluded that when the lease contains an option to purchase for nominal consideration, it is to be presumed that the arrangement was intended as security. *Sight & Sound of Ohio, Inc. v. Wright*, 36 B.R. 885 (S.D.Ohio 1983); *In re J.A. Thompson & Son, Inc.*, 665 F.2d 941 (9th Cir.1982); *In re National Welding of Michigan, Inc.*, 17 B.R. 624 (Bankr.W.D.Mich.1982). Realistically, in that situation the lessee is economically forced to keep and pay for the property. If on the other hand, the lessee can exercise the option to purchase only by paying the fair market value of the property at the end of the lease term, an infer-ence is created that the consideration to be paid is not nominal. *Kellogg*, 822 F.2d at 18, citing *In re Coors of the Cumberland, Inc.*, 19 B.R. 313, 318 (M.D.Tenn.1982). That inference may be rebutted where the fair market value of the property is shown to be negligible. Because of the absence of conclusive authority from state courts of Ohio, this Court follows the line of reasoning of the Sixth Circuit Court of Appeals as set forth in *Kellogg*, interpreting Tennessee law.

■ As was the case in *Sight & Sound* and *Kellogg*, the record before the Court does not contain a factual finding as to the fair market value of the vehicle on the date Farrell could have exercised the purchase option or, for that matter, on any other date. Absent some factual finding as to the relevant market value of the vehicle, the Court cannot find that the option price, designated as the current fair market value as determined by GMAC, is nominal. The Court believes that the debtors, as the party to the Agreement seeking to characterize that document designated in its own terms as "only a lease," as an instrument other than a lease, must present some factual basis for the Court to find that the purchase option would be nominal. In this regard, the debtors have failed to rebut the inference that the fair market value of the vehicle at lease maturity was not nominal.

On the contrary, the Court notes other factors, although not presented as formal evidence, tending to compel a conclusion that the option price would be a substantial sum. First, absent findings which would establish that depreciation of this vehicle should be accelerated more than normal due to high mileage, damage, or other factors, the Court is of the opinion that vehicles of this nature typically have a fair market value at the expiration of 48 months which is greater than a sum characterized as "nominal." Furthermore, the proof of claim filed by GMAC on September 9, 1986 lists the van as having a fair market value of $4153.24. Accordingly, the Court finds that the option price, determinable by GMAC, is not nominal.

■ The debtors argue that the Agreement places many of the incidents and burdens of ownership upon Farrell such as the risk of loss, tax liability, titling and registration fees, maintenance and repair expenses. They further contend, in support of their position, that the Agreement provides for a sum certain ($9378.24) to be paid over the life of the lease with an acceleration provision in the event of default. While these factors are somewhat significant, the Court concludes that such provisions do not necessarily indicate an intent by GMAC to transfer ownership of the vehicle to Farrell. Such obligations frequently appear in "true leases." *Kellogg*, 822 F.2d at 18. The paramount attribute of a lease, retention of title, is expressly set forth in the Agreement, and the parties agreed that the Agreement would be treated as a "true lease" so that GMAC could receive the contemplated tax benefits.

On balance, the Court cannot find, based upon the facts before it, that the Agreement between Farrell and GMAC was actually intended as a security interest. Accordingly, the Court must deny confirmation of the plan proposing to treat GMAC's claim as secured to be paid in an amount equal to the value of the vehicle plus an appropriate discount factor pursuant to § 1325(a)(5).

If the debtors cannot propose to treat GMAC as a secured claimant, the Court next must determine whether the unexpired lease obligation of the debtors is assumable pursuant to 11 U.S.C. § 365. GMAC contends such assumption is prohibited by § 365(c)(2) because the Agreement is a "contract to make a loan or extend other debt financing."

Section 365(c)(2) provides, in pertinent part, as follows:

The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if—

(2) such contract is a contract to make a loan, or extend debt financing or finan-

cial accommodations, to or for the benefit of the debtor ...

■ It is clear from the legislative history and cases interpreting the same that the purpose behind this code section is to prevent the trustee or debtor-in-possession from requiring new advances of money or other property. The language was not intended by Congress to include ordinary leases to provide space, goods or services with payments to be made over time. 124 Cong.Rec. H 11093 (Sept. 28, 1978); H.R. No. 95–595, 95th Cong., 2nd Sess. at 348, U.S.Code Cong. & Admin.News 1978 pp. 5787, 6304. See *In re New Town Mall,* 17 B.R. 326 (Bankr.D.S.D.1982); *In re Postle Enterprises, Inc.,* 48 B.R. 721 (Bankr.D. Ariz.1985). In *In re United Press International, Inc.,* 55 B.R. 63 (Bankr.D.C.1985) the Court held that a non-residential real estate lease which required the lessor to expend money in order to prepare offices for the debtor's occupancy was not a "financial accommodation" as contemplated by § 365(c)(2). In so holding, Judge Bason stated:

The instant lease contract is not a financial accommodation precisely because it is not like a loan commitment or letter of credit. To interpret "financial accommodation" to include the lease contract at issue here would be to allow the exception to swallow the rule. Under such a broad interpretation, any contract could be viewed as providing some financial benefit, and therefore no contract would be assumable. *United Press,* 55 BR at 66.

■ In the case at issue, the Court finds that the Agreement between Farrell and GMAC is only an "ordinary lease" for the 1983 van. GMAC is under no obligation to provide advances of cash or new property. Accordingly, § 365(c)(2) does not present a bar to the debtors' assumption of the Lease Agreement under the terms of their Chapter 13 plan.

■ The Court further finds that the debtors' Chapter 13 plan, as proposed, does not satisfy the assumption requirements set forth in § 365(b)(1). Accordingly, confirmation of the debtors' plan must be de-

nied pursuant to 11 U.S.C. § 1325(a)(1). The debtors shall have twenty (20) days from the entry of this order to propose an amended plan as may be appropriate in this proceeding.

IT IS SO ORDERED.