**In re Bruce A. WALLACE and Eileen T. Wallace, h/w, Debtors.**

**Bankruptcy No. 89–05356.**

United States Bankruptcy Court, D. New Jersey.

Feb. 1, 1990.

Lester J. DaCosta, Sicklerville, N.J., for debtors.

George J. Lavin, Jr. Associates by David G. McNitt, Cherry Hill, N.J., for General Motors Acceptance Corp.

## OPINION

ROSEMARY GAMBARDELLA,
Bankruptcy Judge.

The matter before this court is a motion filed on September 28, 1989 on behalf of creditor General Motors Acceptance Corporation ("GMAC" or "Creditor") to compel the debtors to assume or reject an unexpired lease. The motion seeks *inter alia* an order compelling debtors to assume or reject a lease for a 1987 Buick Century automobile, vehicle identification number ("VIN") 1 G4AH81W2H6435895, within ten (10) days of the entry of such order. In GMAC's application in support of its motion GMAC also seeks to compel the debtors' rejection and termination of the lease; modify the automatic stay under Section 362; and direct turnover of the leased automobile which is in the debtors' possession to GMAC. The following constitutes this court's findings of fact and conclusions of law.

On July 11, 1989 Debtors Bruce Wallace and Eileen Wallace ("Debtors") filed a Chapter 13 petition under the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, and the Bankruptcy Judges, United States Trustees and Family Farmer Bankruptcy Act of 1986 ("Bankruptcy Code"). In conjunction with their petition, the Debtors filed a Chapter 13 plan which provides for the total payment of $377.82 monthly to the Chapter 13 Standing Trustee for sixty (60) months to cure mortgage arrearages to Beneficial Mortgage Corporation and Beneficial Financial Company on two residential mortgages. Also included in the plan was a "cramdown" of GMAC's claim in the subject vehicle to $11,906.25 payable in 60 monthly payments of $198.44 of the total monthly plan payment. The plan provided that unsecured creditors would receive no dividend. By Order dated October 19, 1989, the Debtors' Chapter 13 case was dismissed for failure to attend the confirmation hearing scheduled on October 18, 1989. At a hearing conducted on November 15, 1989, the Debtors' Chapter 13 case was subsequently reinstated upon verification of insurance on the subject vehicle. Proof of insurance was supplied to GMAC. By order dated January 11, 1990, the Chapter 13 petition was reinstated.

On July 2, 1987, Debtors and GMAC entered into an agreement entitled "Lease Agreement." Debtors were described as "Lessee (and Co-lessee if any)" and GMAC was described as "Lessor." The vehicle was described as a 1987 Buick Century ("leased vehicle"). The agreement provided for a total of 48 monthly payments of $280.62 for a total lease price of $13,469.76. On July 6, 1987 GMAC purchased the vehicle from Masson Buick, Inc. for the sum of $13,437.00.

Paragraph 8 of the lease agreement provided Debtors with an option to purchase the vehicle as follows:

8. OPTION TO PURCHASE. Provided you are not in default, you will have the option to purchase the vehicle at the scheduled termination of this lease (Item 6 above) for its Fair Market Value if you advise Lessor no later than 30 days prior to the scheduled termination. "Fair Market Value" will be the average of the retail and wholesale values stated in a then current vehicle guidebook selected by Lessor. For this purpose, the value established will be the "clean" or "average" value of a like vehicle including options and with the mileage that would have accrued if the vehicle had been operated in accordance with the Excess Mileage Charge provision of the lease. Upon early termination, you will have the option to purchase the vehicle for the greater of its Fair Market Value or the amount due Lessor under Paragraph 12(c)(i) in addition you will also be responsible for any fees and taxes in connection with the purchase of the vehicle.

Paragraph 12 entitled "Early Termination and Default" stated:

12. EARLY TERMINATION AND DEFAULT.

(a) Provided you are not in default, you may terminate this lease prior to its scheduled termination (Item 6 above) if you give the Lessor 15 days written notice. Upon early termination, your obli-

gation will be determined under Paragraphs 12(c)(i) and 12(c)(ii).

(b) You will be in default if any of the following occur: (1) You do not make a payment when due; (2) You or your property are the subject of a proceeding in bankruptcy, receivership or insolvency or you make an assignment for the benefit of creditors; (3) You fail to comply with the insurance requirements of the lease; (4) You fail to maintain or repair the vehicle as required by the lease; (5) You have made any material misrepresentation on your Lessee Statement; (6) You fail to answer traffic summons or pay fines when due; or (7) You fail to comply with any other terms or conditions of the lease. If you are in default, Lessor may terminate this lease prior to the scheduled term. Your obligation to Lessor will then be determined in accordance with Paragraphs 12(c)(i) and 12(c)(ii).

(c)(i) Upon early termination, Lessor will calculate the remaining amount you owe by totalling the unmatured Fixed Monthly Rental Charges for the remaining scheduled term. Lessor then will add the residual value of $4,414.92 plus any past due Monthly Payments and additional amounts owed by you and subtract any unearned Charges. The unearned Charges will be determined by applying actuarial method to the amount of $3,685.44.

(c)(ii) If the vehicle is not purchased by you under the provisions of Paragraph 8 above, Lessor will sell it at wholesale in a commercially reasonable manner and apply the greater of the amount of the net proceeds as defined below or the residual value to the amount determined in Paragraph 12(c)(i). If there is a balance due, you agree to pay it promptly. Any surplus will be kept by Lessor. To arrive at the net proceeds of sale, Lessor will subtract from the proceeds of sale the reasonable costs of preparing the vehicle for sale and selling it. If Lessor terminated the lease pursuant to Paragraph 12(b), then Lessor also will subtract the costs of taking and storing the vehicle, and reasonable attorney's fee if permitted by law.

(d) To the extent that the amount you owe is based on the value of the vehicle at the end of the lease term, if you disagree with the value Lessor assigns to the vehicle, you may obtain at your expense, from an independent third party agreeable to you and Lessor, a professional appraisal of the wholesale value of the vehicle which could be realized at sale. The appraisal value shall then be used as the actual value.

Paragraph 24 of the lease agreement provides:

24. OWNERSHIP. This is a lease only and Lessor remains the owner of the vehicle. You will not transfer, sublease, rent, or do anything to interfere with Lessor's ownership of the vehicle. You and Lessor agree that this lease will be treated as a true lease for Federal Income Tax purposes and elect to have Lessor receive the benefits of ownership (IRC sec. 168(f)(8)).

The two-page agreement contained in total 29 paragraphs the additional details of which will be discussed infra as they become relevant to the matter before this court. The certificate of title issued by the State of New Jersey Division of Motor Vehicles is in the name of GMAC.

GMAC brings this motion to compel Debtors to assume or reject the automobile lease. In response, Debtors argue that the lease agreement is no longer a "true lease", but rather a security agreement by virtue of Debtors exercising the option to purchase by filing a Chapter 13 petition and plan and proposing to pay to GMAC the fair market value of the vehicle. In essense, Debtors argue that the lease agreement was a "true lease" when it was executed on July 2, 1987, but that it was converted to a "sale" by the Debtors' filing of the Chapter 13 petition. The Debtors further assert that all of GMAC's rights and remedies must be in the context of a sale and that there was no agreement giving GMAC a security interest in the vehicle. The Debtors assert that since GMAC has not perfected a security interest

in the vehicle pursuant to N.J.S.A. 39:10–11, its claim is unsecured and that a modification of the plan will follow pending the determination of this motion. In reply to Debtors' arguments, GMAC claims that under the lease itself and § 1322(b)(7) of the Bankruptcy Code, Debtors cannot elect the option to purchase by the mere means of filing a petition and plan. GMAC argues that the lease agreement is a "true lease", that the question of GMAC's interest in the motor vehicle is not properly before this court by motion, and Debtors are required to bring an adversary complaint in order for this court to determine the question of GMAC's interest in the automobile.

It appears undisputed that the Debtors made 24 payments under the lease and that the last payment was received on June 21, 1989. The Debtors' Chapter 13 petition was filed on July 11, 1989. The Debtors are due, according to the GMAC, for all payments since July 2, 1989.

■ Preliminarily, GMAC raises certain procedural objections to the defenses raised by the Debtors to this motion. On September 14, 1989 GMAC filed its proof of claim asserting that the Debtors were liable to GMAC on account of an "Automobile Lease Agreement" in the amount of $9,571.27. GMAC takes the position that under Bankruptcy Rule 3001(f) "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim" and that Section 502(a) further provides that "A claim or interest, proof of which is filed under Section 501 of this title is deemed allowed, unless a party in interest ... objects." GMAC asserts that it has received no objection to its proof of claim. GMAC also contends that while Bankruptcy Rule 6006(a) provides that actions related to assumption or rejection of unexpired leases may be requested by motion under Bankruptcy Rule 9014, a determination of whether an executory lease exists in the first instance may be raised only by the filing of an adversary complaint under Bankruptcy Rule 7001.

This court finds that no basis for such requirement has been demonstrated by GMAC. The cases relied upon by GMAC are not analogous to the case at bar. *See e.g. In re Harry C. Partridge Jr. & Sons, Inc.*, 43 B.R. 669 (Bankr.S.D.N.Y.1984) (debtor's cross-motion for a declaratory judgment declaring that there is no default by the debtor of an executory contract must be commenced by adversary proceeding); *In re McKay*, 732 F.2d 44 (3d. Cir. 1984) (where debtor seeks to avoid a judicial lien under § 522(f) the adversary proceeding rules are applicable);[1] *In re Commercial Western Finance Corp.*, 761 F.2d 1329 (9th Cir.1985) (Rules of Bankruptcy Procedure required trustee to file adversary proceedings against the investors whose partial assignments trustee sought to avoid pursuant to Section 544); *In re Mechanical Unlimited, Inc.*, 38 B.R. 818 (Bankr.D.Hai.1984) (pursuant to Bankruptcy Rule 7001 an action to avoid transfers under Section 548 of the Bankruptcy Code must be brought by an adversary proceeding).

Here the court is of the opinion that the threshold determination that it must make in the context of a motion to compel assumption or rejection of an executory lease—that the movant properly claims an interest under a lease—can be accomplished by motion pursuant to the procedures contained in Bankruptcy Rule 9014 for disposing of contested matters.

■ The threshold question in the instant case is whether the lease is a "true lease" or a lease intended for security. In order to reach a determination as to the nature of the document in question, the court must first examine state law, here, N.J.S.A. 12A:1–201(37), which provides in relevant part:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself

---

**1.** Present Bankruptcy Rule 4003(d) effective August 1, 1987 now provides that "a proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014."

make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

There are no absolute standards to distinguish a true lease from a security agreement, however, many courts have set forth factors deemed to be reflective of the parties' intentions. The court is left to balance these factors. If the proprietary interest in the property is weighed in favor of the party designated as lessee, the document is a security agreement. If the balance of incidents of ownership tips toward the party designed as lessor, the document is a lease. *See, In re Noack*, 44 B.R. 172, 174 (Bankr.E.D.Wis.1984).

Certain factors point toward an agreement being a security agreement: (1) if the lessee is required to insure the items in an amount equal to the total rental payments; (2) if the risk of loss or damage is on the lessee; (3) if the lessee is to pay taxes, repairs, damage and maintenance; (4) if there are default provisions governing acceleration and resale of the item; (5) if there is a substantial nonrefundable deposit; (6) if the goods are selected from a third party by the lessee; (7) if the rental payments are a reasonable equivalent of the cost of the items plus interest; (8) if the lease is to be discounted with a bank; and, (9) if warranties generally found in a lease are excluded by the agreement. *See In re Noack*, 44 B.R. at 175. Additional criteria identified by the courts to assist in the determination of whether a lease is a security agreement are:

(1) whether there was an option to purchase for a nominal sum,

(2) whether there was a provision in the lease granting the lessee an equity or property interest in the equipment,

(3) whether the nature of the lessor's business was to act as a financing agency,

(4) whether the agreement included a clause permitting the lessor to accelerate

the payment of rent upon default of the lessee and granted remedies similar to those of a mortgagee,

(5) whether the equipment subject to the agreement was selected by the lessee and purchased by the lessor for this specific lessee,

(6) whether the agreement required the lessee to join the lessor, or permit the lessor by himself, to execute a UCC financing statement,

(7) whether there was a default provision in the lease inordinately favorable to the lessor,

(8) whether there was a provision in the lease for liquidated damages,

(9) whether there was a provision disclaiming warranties of fitness and/or merchantability on the part of the lessor,

(10) whether the aggregage rentals approximate the value or purchase price of the equipment.

*Matter of Brookside Drug Store, Inc.*, 3 B.R. 120, 122–123 (Bankr.D.Conn.1980).

Some court have recognized that the acquisition of equity in the leased property by the lessee and the payment of a nominal option price are the *critical* factors in determining that a lease is a security agreement. *See, In re Odell*, 27 B.R. 520 (Bankr.D.Ore.1983); *In re Dunn Brothers, Inc.*, 16 B.R. 42, 45 (Bankr.W.D.Va.1981); *In re Ram Manufacturing, Inc.*, 45 B.R. 663, 666 (Bankr.E.D.Pa.1985), *modified*, 56 B.R. 769 (E.D.Pa.1985).

Courts have recognized that the definition of "nominal consideration" may vary and so have adopted an "economic realities" test. These courts have held that if at the end of the term the only economically sensible course for the lessee is to exercise the option to purchase the property, then the agreement is a security agreement. *See e.g. In re Dunn Brothers, Inc.*, 16 B.R. 42, 45 (Bankr.W.D.Vir.1981). These courts have determined that if the price to the lessee is much less than the fair market value of the property, then the lessor has recognized an equity in the lessee, and the lease was intended as a security instrument. *Id.* Accordingly, even if an agreement provides for surrender of the

property to the lessor at termination of the agreement, or upon a default of the lessee, an equity in the lessee may still be recognized, where for example the lessee is entitled to any surplus of proceeds after the lessor claims liquidated damages under the agreement. *Id. citing, In re Tillery*, 571 F.2d 1361, 1365 (5th Cir.1978). In determining whether the option to purchase may be exercised for a nominal consideration, some courts have focused on whether the lessee has no plausible alternative but to exercise the option either because of the substantially greater market value of the property at the date the option may be exercised, or because of other relevant factors such as the substantially less attractive option to continuing renting the property or purchase it outright for a comparatively nominal amount. *See, In re Sight & Sound of Ohio, Inc. v. Wright*, 36 B.R. 885, 890 (S.D.Oh.1983).

In *BJL Leasing Corporation v. Whittington, Singer, Davis and Company, Inc.*, 204 N.J.Super. 314, 320–21, 498 A.2d 1262 (App.Div.1985), the Superior Court of New Jersey, Appellate Division determined that pursuant to N.J.S.A. 12A:1–201(37)(b), a lease agreement which provides that upon compliance with the lease terms the lessee either becomes the owner or can exercise an option to purchase for no additional consideration or for nominal consideration, a security agreement is established as a matter of law.

In *Leasing Service Corp. v. America National Bank & Trust Co.*, 19 UCC Rep. 252, 259 (D.N.J.1976), the court held that where the total rentals for the subject equipment over the five-year lease term, exceeded the cost of the equipment by approximately 37% that fact supported the conclusion that the transaction was a conditional sale and not a true lease. *Id.* at 259. *Accord Citi–Lease Company v. Entertainment Family Style, Inc.*, 825 F.2d 1497, 1500 (11th Cir.1987) (Contract was a conditional sale where among other factors the rental payments of $74,880.00 exceeded the purchase price of $60,000.00 for the subject video games; the court concluded that "the $74,880 total represented the fair market

value of the "leased" property plus a financing charge.")

The decisive factor in distinguishing a lease intended as security from a true lease is whether the instrument in question will ultimately result in the purported lessee gaining *de facto* ownership of the subject matter of the lease. *See, In re Coors of the Cumberland, Inc.*, 19 B.R. 313, 316 (Bankr.M.D.Tenn.1980). In the *Coors* case, the court found that the lessee was obligated to purchase the subject vehicles upon the termination of the agreement. 19 B.R. at 317. The *Coors* court noted that absent a purchase price at a nominal figure, an intention to abandon its property cannot easily be imputed to the lessor, unless there is added to the facts a finding that the minimum term closely approximates the anticipated economic life of the equipment, in which case the intention is made obvious. 19 B.R. at 318.

Courts have considered whether agreements contain "residual guaranty" clauses which provide that at the expiration of the agreement, the equipment shall be sold and the lessor *guaranteed* a fixed sum referred to as the "residual value" of the equipment and whether the risk of disposing of the assets was truly upon the lessee since the lessor was assured of a fixed return regardless of what was ultimately received from the sale of the equipment. *See, In re Noack*, 44 B.R. at 176.

In the *Noack* case, the agreement before the court contained neither an option to purchase nor a mandatory purchase clause. Neither party was entitled to possession of the equipment upon termination, instead the equipment had to be sold on the open market at which time the lessor was guaranteed a fixed sum referred to as the residual value of the equipment. 44 B.R. at 175–76. In that case, the court determined that the equipment lease was a security agreement since it conferred upon the debtor lessee therein indicia of ownership consistent with a proprietary interest in the equipment. *Id.* at 176. In so ruling, the court relied upon the fact that if the lease was fully completed the lessor under the agreement would receive a return equiva-

lent to the full value of the equipment as of the inception of the agreement together with an effective interest rate of slightly more than nine (9%) percent supporting the conclusion that the agreement was a security agreement. *Id.*

In the case of *In re Farrell,* 79 B.R. 300 (Bankr.S.D.Oh.1987) the court was presented with the question of whether a lease was a "true" lease in the course of a Chapter 13 confirmation hearing. In *Farrell,* the Debtors' Amended Chapter 13 plan proposed to treat a claim by GMAC under a "Lease Agreement" as a fully secured claim which would be paid in full to the value of the collateral plus a discount factor equal to the current market value of the interest as required by 11 U.S.C. § 1325(a)(5). GMAC objected to the confirmation or the plan on the grounds that GMAC's claim was as a lessor not as a secured creditor. The court noted that the Bankruptcy Code provides for the assumption or rejection of a lease pursuant to § 365(b)(1) but that the term "lease" is undefined by the Code. *Id.* at 302. The *Farrell* court observed that the legislative history following the Code definition of "security interest" in § 101(45) indicates that state and local law should be applied to determine when a lease is a security instrument. *Id.* (*citing* H.R. No. 95–595, 95th Cong., 1st Sess. at 314 (1977), U.S. Code Cong. & Adm.News 1978, pp. 5787, 6271. The bankruptcy court applied the Ohio Revised Code § 1301.01(kk) which is identical to N.J.S.A. 12A:1–201(37), and held that the lease agreement was a true lease. *Id.*

In *Farrell* the debtors were obligated to pay the total of $9,378.24 over the 48–month term of the lease. The agreement obligated the debtors to pay all costs associated with titling, maintenance, repair and operation costs, all taxes, and insurance with coverage limits as determined by GMAC. Under the agreement the debtors were obligated to return the vehicles at the end of the lease term. At lease maturity the debtors had the option to purchase the vehicle at a price GMAC determined to be the current fair market value of the vehicle. *Id.* at 302. In holding that the lease

agreement was a true lease, the *Farrell* court found that absent some factual finding as to the relevant market value of the vehicle, the court could not find that the option price designated as the current fair market value as determined by GMAC was nominal. *Id.* at 303. The court also stated:

> On the contrary, the Court notes other factors, although not presented as formal evidence, tending to compel a conclusion that the option price would be a substantial sum. First, absent findings which would establish that depreciation of this vehicle should be accelerated more than normal due to high mileage, damage, or other factors, the Court is of the opinion that vehicles of this nature typically have a fair market value at the expiration of 48 months which is greater than a sum characterized as "nominal." Furthermore, the proof of claim filed by GMAC on September 9, 1986 lists the van as having a fair market value of $4153.24. Accordingly, the Court finds that the option price, determinable by GMAC, is not nominal.

*Id.* at 303.

The *Farrell* court further found that while the agreement placed many incidents and burdens of ownership on the debtors such as risk of loss, tax liability, titling and registration fees, maintenance and repair expenses and the agreement provided for a sum certain to be paid over the life of the lease with an acceleration provision in the event of default. "[t]he paramount attribute of a lease, retention of title", was expressly set forth in the Agreement, and the parties agreed that the Agreement would be treated as a "true lease" so that GMAC could receive the contemplated tax benefits. The court found on balance, based on the facts before it, that the agreement was not intended as a security interest, but was a lease. *Id.* at 304.

In the case of *In re Cole,* 100 B.R. 561, 564 (Bankr.N.D.Okla.1989), the court held that where the lessor retained a meaningful residual interest in the subject vehicle the agreement should be construed as a true lease. *Id.* at 564. The *Cole* court noted there that although the debtor had an option to purchase the vehicle it was not

a forgone conclusion that the debtor would exercise the option since the option price was the reasonably predictable fair market value of the vehicle at the end of the term so that there was no economic incentive compelling the debtor to purchase the vehicle. *Id.* at 564.

In *Cole,* the lease provided for a term of 48 months with a total payment of $9,789.30. At the end of the lease term the debtor had the option to purchase the vehicle for $4,710.97 or to return the vehicle without further obligation except for excess mileage and wear and tear charges if applicable. *Id.* at 562. The *Cole* court found that the lessor, Ford Motor Credit Company, retained a "meaningful residual interest in the vehicle with a value of approximately $4,710.97." *Id.* at 564. The *Cole* court further noted:

> In a typical arms-length sale of goods, the buyer has a contractual obligation to pay the seller consideration with a present value approximating the fair market value of the goods at the time of sale. Where the present value of lease payments, and any other consideration or obligation under the lease, is significantly less than such fair market value, the transaction is probably a lease because the payment obligation is inconsistent with a buyer's obligation in a sale. In this case, assuming a 12% discount factor, the present value of the payments Debtor was obligated to make was roughly $11,150.00. The manufacturer's suggested retail price for the Vehicle, an amount reasonably approximating its fair market value, was $13,310.40. Therefore, under the Agreement, Debtor was obligated to pay consideration with a present value of approximately 84% of the fair market value of the Vehicle, which payment obligation is inconsistent with a sales transaction.

*Id.* at 565. (Emphasis in original).

GMAC has cited two contrary cases from the United States Bankruptcy Court North-

ern District of Oklahoma which considered the question of whether a lease was a "true lease" or secured transaction. *See In re Thompson,* 101 B.R. 658 (Bankr.N.D.Okla. 1989); *In re Harvey,* 80 B.R. 533, 537 (Bankr.N.D.Okla.1987).

In the case of *In re Thompson,* the bankruptcy court for the purpose of that decision, consolidated nine adversary proceedings brought by the trustee under nine different Chapter 7 cases against Ford Motor Credit Corporation to determine ownership of or priority of conflicting interests in certain motor vehicles or their proceeds. *Thompson,* 101 B.R. at 660. The *Thompson* court noted that its decision regarding these pre–1988 leases was based on "pre–1988" law [2] in Oklahoma.

The bankruptcy court determined that under existing pre–1988 Oklahoma law, secured transactions were shown by: (1) the concentration of all the incidents of ownership of the vehicles, save bare legal title in lessee; (2) the effect of termination provisions which established an equity in the vehicles in lessee and removed any reversionary interest from lessor; and (3) economic equivalence of the transaction with secured sales or loans. In respect to these three points, the court determined based on the following that the lease was equivalent to a secured transaction. *Id.* at 670.

In this regard, the *Thompson* court determined that as a practical matter a lease which allocates to the lessee all of the incidents of ownership (paying all fees, taxes, penalties, expenses of maintenance and repair) except bare title is equivalent to a secured transaction. *Thompson,* 101 B.R. at 670. *Accord In re Harvey,* 80 B.R. 533, 539 (Bankr.N.D.Okla.1987) (incidents of ownership such as maintenance charges, license fees, taxes, repairs, insurance, both casualty and comprehensive, risk of loss, default provisions governing acceleration

---

**2.** The *Thompson* court noted that the 1988 amendments to Oklahoma Statutes 12A O.S.A. (1989 Supp.) Article 2A and related provisions (§§ 2A–102, 2A–103(1)(j), 9–102–(1)(a), (2) and 12A O.S.A. (1989 Supp.) § 1–201(37) do not apply to the transactions in this because they were

entered into before the effective date of the amendments. Thus, in resolving the issue of whether a purported lease is a "true" lease or secured transaction, the court relied on the "prior law" in effect at the time of the transactions. *Id.* at 668–669.

and resale, the ability of the lessee to select and have ordered the vehicle meeting the lessor's specific specifications, rental payments being equivalent to the costs of goods plus interest, less the residual value of the goods, indicate transaction to be a sale).

The *Thompson* court determined with regard to the termination provisions contained in each of the leases that since the lessor was not required to extinguish its reversionary interest in the vehicle, the lease was inconsistent with true ownership as a matter of law, thus the leases did not clearly establish an equity in the lessee nor extinguish the lessor's reversion. *Id.* at 672.

The court determined however that the transactions were economically equivalent to secured sales or loans. The court stated in this regard:

> In short, the transactions governed by these lease forms are secured credit sales or purchase-money loans, tailored to fit car and truck buyers who prefer to trade in their vehicles after a few years, pay off a large part of the sale price and finance charges at that time in a single large "balloon" payment, and acquire brand-new vehicles. The "lease" form contracts themselves are merely a cover, a charade, a sham—a lie.

101 B.R. at 675.

The *Thompson* court determined that the payments under these lease agreements were equivalent to a sales contract by virtue of the fact that the payment under the lease of the full purchase price of the car plus 40% would be consistent with a direct purchase of a car. *Id.* at 676. In *Thompson,* the court examined a contract similar to that examined in the case of *In re Cole,* 100 B.R. 561 (Bankr.N.D.Okla.1989) and stated in this regard:

> When the contract [lease] is considered prospectively, it appears that FMCC as lessor in the Cole lease could expect to recover almost $14,092.32 rent plus $4,710.97 option purchase price for a total of $18,803.29 over four years, an increase of 41% over the manufacturer's retail price of $13,310.40. Thus, if the purchase option were exercised, Cole would pay the full purchase price of the car plus about 40% over four years—which appears to be perfectly consistent with a sales transaction.

*Id.* at 676. This reasoning is unpersuasive. It assumes that a lessee is willing to pay the full purchase price plus over 40% to purchase the vehicle. It is not clear to this court that at the end of the term of the lease examined in *Thompson* the only economically sensible course for the lessee would be to exercise the option to purchase the property.

In the case before this court, the parties have entered into a "Lease Agreement" for forty-eight months. Under the Lease, it is clearly set forth that the debtors are the "lessee and co-lessee", GMAC is the "lessor," and the 1987 Buick Century is the "leased vehicle." According to the lease, Debtors are responsible for the following: (1) obtaining the necessary insurance; (paragraph "A" and paragraph 14); (2) paying the initial costs of titling, licensing, and registering the vehicle in addition to sales tax, maintenance, repairs, and operating expenses (paragraph 1, 5 and 10); (3) costs of excess wear and use (paragraph 11); (4) costs of excess mileage (paragraph 13); (5) remittance of an initial security deposit (paragraph 16); (6) subsequent costs to license, register the vehicle, and taxes incurred during the term of the lease except those levied on the net income of GMAC, and annual state motor vehicle inspection (paragraph 20), and; (7) to indemnify lessor against claims and liability (paragraph 25).

Debtors argue that the above obligations coupled with the option to purchase in paragraphs 8 and 12 are incidents of ownership and thus the lease is not a true lease but rather a security agreement. This court does not dispute Debtors argument that the above list of obligations are incidents of ownership; however, this alone does not persuade the court that the lease is not a true lease. Courts have held that placing the incidents and burdens of ownership on the lessee such as the risk of loss, tax liability, titling, registration fees, mainte-

nance and repair expenses are significant factors in determining the issue of whether a lease is a true lease or security agreement; however, these factors do not necessarily indicate an intent by the lessor to transfer ownership since such obligations are frequently the responsibilities of the lessee in a "true lease." *Farrell*, 79 B.R. at 304 (*citing Jahn v. M.W. Kellogg Company, Inc.*, 822 F.2d 16 (6th Cir.1987).

The *Farrell* court noted that the paramount attribute of a lease is the retention of title by the lessor. *Farrell*, 79 B.R. at 304. In the instant case, GMAC retained title to the 1987 Buick Century even though Debtor's were burdened by many of the incidents of ownership.

There are also several provisions of the present lease which strongly indicate that the lease is a true lease rather than a security interest.

(1) Debtors if they do not purchase the vehicle, must return the vehicle at the scheduled termination of the lease (Paragraph 19).

(2) Lessor GMAC, subject to certain provisions of Paragraph 12, obtains insurance proceeds in the event of theft or destruction of the vehicle during the lease (Paragraph 21).

(3) Upon default by debtors, lessor can take possession of the vehicle (Paragraph 23).

(4) Ownership of the vehicle is in the lessor (Paragraph 24).

(5) Only lessor can assign its rights under the lease, lessee cannot assign the lease (Paragraph 28).

The provision which most strongly indicates the existence of a "true lease" rather than a security agreement is Paragraph 8, the option to purchase provision, which provides that Debtors could exercise an option to purchase the vehicle for the "fair market value" of the vehicle as determined by lessor at the expiration of the lease. In *Farrell*, the court noted that the most significant factor to be considered is the status of the lessee at the end of the lease. *Farrell*, 79 B.R. at 304. The *Farrell* court, quoting from *Jahn v. M.W. Kellogg Company*,

*Inc.*, 822 F.2d 16 (6th Cir.1987) observed that:

> ... [t]he most illustrative test to distinguish between a true lease and a lease intended as security is whether the "lessee" is "obligated to accept and pay for the property or [instead] is obligated only to return or account for the property according to the terms of the lease from which he may be excused if he exercises his privilege of purchasing it." If the former is true, then the lease is security instrument in a disguised sale, if the latter, then a true lease exists.

*Id.* at 304.

The subject lease provides for a term of 48 months with a total rental payment of $13,469.76, including sales taxes, in addition to the initial license fee of $50.00. GMAC paid $13,437.00 for the original purchase of the vehicle.

Under Paragraph 12, the "Early Termination and Default" provision, provided the Debtors are not in default, they may purchase the vehicle by paying the greater of the fair market value of the vehicle at the date of actual termination or the amount determined by the specific formula contained in Paragraph 12(c)(i).

Under the provisions of Paragraph 12(c)(ii), if the vehicle is not purchased by the Debtors pursuant to Paragraph 8, GMAC may sell the vehicle at wholesale and apply the greater of the amount of net proceeds or the residual value to the amount determined by Paragraph 12(c)(i). If there remains a balance due, the Debtors must pay it. If there is a surplus, it enures to the benefit of GMAC.

This court cannot find that the option price, whether calculated at the scheduled termination of the lease as the fair market value as determined by GMAC, or calculated prior to termination as the greater of the fair market value at the date of termination or the amount calculated pursuant to the formula contained in Paragraph 12(c)(i) is nominal.

Accordingly, this court is satisfied that under N.J.S.A. 12A:1–201(37) and the authority cited above that the lease entered

into between Debtors and GMAC is a true lease. While the lease does provide the Debtors with some of the attributes of ownership, the critical attribute of ownership at the end of the lease remains in GMAC and thus is a true lease.

The next issue for consideration is Debtors' argument that by filing their Chapter 13 plan and treating the lease as a sale in their Chapter petition, they have exercised their option to purchase the vehicle. Debtors do not cite any authority in support of the proposition that by the mere filing of its Chapter 13 petition it has exercised the option to purchase the subject vehicle. In response, GMAC asserts that the Debtors have not complied with the provisions for exercising the option to purchase under paragraph 8 and 12. GMAC further argues that under § 1322(b)(7) of the Bankruptcy Code, the Debtors must comply with § 365 in order to exercise the option.

GMAC argues that the Debtors if they choose to exercise the purchase option must comply with the provisions of Paragraph 12 dealing with early termination and comply with the provisions of that paragraph which requires fifteen (15) days prior written notice and a determination of the price at which the lessee may purchase, which is the greater of the fair market value or the amount calculated under Paragraph 12(c)(i). GMAC asserts that until the Debtors raised the point in their brief filed in response to this motion, GMAC was not notified of the Debtors' intent to terminate the lease early and purchase the vehicle.

■ Under either Paragraphs 8 or 12 of the Lease Agreement, it is clear that at the date of the filing of the Debtors' Chapter 13 petition, even assuming that the option was properly exercised, which GMAC does not concede, the lease agreement remained an executory contract.

In the case of *Matter of Dunes Casino Hotel*, 63 B.R. 939, 948 (D.N.J.1986) the Honorable Stanley S. Brotman, U.S.D.J., held that an option to purchase certain real estate held by the debtor pursuant to a Real Estate Option Agreement between the debtor, the Dunes Casino Hotel and GNAC

Corporation, was an executory contract at the time the debtor filed its Chapter 11 petition.

In so ruling, Judge Brotman stated:

The Code does not define "executory contract," but the legislative history identifies it as one "on which performance remains due to some extent on both sides." Notes of Committee on the Judiciary, S.R.Rep. No. 96–989, 95th Cong., 2d Sess. 58 (1978), contained in 1978 U.S. Code Cong. & Admin.News 5787, 5844. The bankruptcy court relied on an oft-cited definition of an executory contract provided by Professor Countryman:

[A] contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other.

Countrymen, Executory Contracts in Bankruptcy: Part I, 57 Minn.L.Rev. 439, 460 (1973), cited in September Opinion at 38; *In re Alexander*, 670 F.2d 885, 887 (9th Cir.1982); *In re Chicago, Rock Island & Pacific R.R. Co.*, 604 F.2d 1002, 1004 (7th Cir.1979); *In re Knutson*, 563 F.2d 916, 917 (8th Cir.1977).

\* \* \* \* \* \*

... the court finds that on July 26, 1985 "substantial performance" remained on both sides of the Dunes–GNAC Agreement. GNAC had tendered the deeds and title documents, but had not delivered them, at least in part due to Dunes' refusal to accept them. *See* September Opinion at 16. Thus, GNAC had not completed its performance. Of course, Dunes still owed the purchase price at that time. Consistent with its rights under the contract, GNAC notified Dunes that it was in default, thus triggering the "cure" provision. The contract would remain "executory" from July 26 to August 10, and the Chapter 11 filing on August 9 preserved that "executory" status pending reorganization. In sum, this court will uphold the bankruptcy court's determination that the

contract was "executory" at the time of the filing.

63 B.R. at 948–949.

The Debtors must comply with § 1322(b)(7) and § 365 of the Bankruptcy Code as well as Paragraphs 8 and 12 of the lease in order to assume the lease agreement or exercise the option to purchase.

Section 1322(b)(7) provides that a Chapter 13 plan may "subject to Section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1322(b)(7). In the instant case, the lease can be viewed as both an unexpired lease and an executory contract to exercise the purchase option contained in the lease.

Accordingly, the Debtors' plan is subject to § 365 of the Code.

Section 365 provides in relevant part:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

■■■ Debtors' argument that they have exercised the option simply by filing their Chapter 13 petition must fail. Under § 1322(b)(7) of the Code, the Debtors are required to comply with § 365 which sets forth the means by which Debtors can assume the unexpired lease or the executory contract that being the option to purchase provision. Merely filing a Chapter 13 petition and plan is insufficient to assume an unexpired lease or executory contract. Under § 365(a) the Debtors may assume an unexpired lease or executory contract only "subject to the court's approval." 11 U.S.C. § 365(a). The Debtors' filing of a petition and plan does not satisfy the § 365(a) requirement of obtaining court approval. Additionally, if this court determines that Debtors are in default, as GMAC argues, the Debtors must satisfy the requirements of § 365(b)(1)(A), (B) and (C); of curing the default; compensating GMAC for actual pecuniary loss resulting from the default; and providing GMAC with adequate assurance of future performance.

Because this court has determined that the subject lease is a "true lease" rather than a security agreement and that the lease is subject to §§ 1322(b)(7) and 365, the Debtors must formally assume or reject the lease and satisfy the requirements of § 365.

■■■ Under § 365(d)(2) of the Bankruptcy Code, in a Chapter 13 case, the debtor "may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of the plan." Upon the request of a party to such contract or lease, the court "may order" the debtor "to determine within a specified period of time whether to assume or reject such contract or lease. 11 U.S.C. § 365(b)(2). What constitutes a reasonable time is left to the bankruptcy court's discretion in light of the circumstances of the case. *See Matter of Dunes Casino Hotel,* 63 B.R. at 949. The court in *Dunes, supra* noted that in determining what constitutes a reasonable time within which a debtor should assume or reject a contract, the court should consider a number of factors, including: the nature of the interests at stake, the balance of the hurt to the litigants, the safeguards afforded those liti-

gants and whether the action to be taken is so in derogation of Congress' scheme that the Court may be said to be arbitrary. *Id.* at 949. The *Dunes* court recognizes that the court should interpret reasonable time considerations with the broad purposes of in that case a Chapter 11 proceeding, which is "to permit successful rehabilitation of debtors." *See id., citing, N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984).

 In this case the debtors' stated intention to exercise the option to purchase the vehicle by the institution of this Chapter 13 case makes it incumbent upon the debtors to forthwith comply with the provisions of § 365.

Accordingly, the Court shall grant the Debtors fifteen (15) days from the date of this opinion to file a motion for authority to assume or reject the lease in issue, including the option to purchase, and within that time period to file an amended plan which complies with the requirements of this opinion. If the debtors default in performing these acts, the court, upon certification by GMAC of such default shall enter an order deeming the lease rejected and modify the automatic stay of Section 362 for "cause" to allow GMAC to obtain possession of the subject vehicle insofar as the court finds that GMAC's interest in the vehicle would not be adequately protected in the event of any further delay.[3]

An order shall be submitted in accordance with this opinion.

---

**3.** Title 11 U.S.C. § 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (1) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.